IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03464-PAB-NRN

JEFFREY T. MAEHR,

Plaintiff,

v.

INTERNAL REVENUE SERVICE,

Defendant.

---

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. #51]
and
MOTION FOR DECLARATORY JUDGMENT BY MR. MAEHR [DKT. #58]**

---

**N. REID NEUREITER
United States Magistrate Judge**

This matter is before the Court on referral from Chief Judge Brimmer. This is a Freedom of Information Act ("FOIA") lawsuit where Plaintiff Jeffrey Maehr has sued seeking documents in the Internal Revenue Service's ("IRS") possession used to support adverse tax assessments levied against him.

The IRS has conducted a search for the requested documents, produced what could be located, and seeks summary judgment. *See* Dkt. #51 (Motion for Summary Judgment). That Motion and a subsequent IRS Motion to Supplement (Dkt. #52) were referred to me by Chief Judge Brimmer. *See* Dkt. #53 (Memorandum Feb. 9, 2021, referring Motion for Summary Judgment by Defendant IRS and Motion to Supplement Motion for Summary Judgment with Supplemental Declaration of IRS Attorney Angela Winters).

Also before the Court is Plaintiff's Motion for Declaratory Judgment (Dkt. #58), referred by Chief Judge Brimmer on February 11, 2021. *See* Dkt. #59.

As an initial matter, the IRS's Motion to Supplement, Dkt. #52, is **GRANTED**. The supplemental declaration of IRS attorney Angela Winters provides additional details about the scope and thoroughness of the IRS's search for the documents sought by Mr. Maehr. The supplemental declaration describes additional efforts to locate missing records via computer search and contacting of individuals with knowledge.

## Background

This is an action brought under FOIA. Plaintiff, Mr. Jeffrey T. Maehr, is a disabled veteran who has had various conflicts over the years with the IRS regarding alleged unpaid tax assessments. In other proceedings, he has attempted to challenge both the assessments and the consequences resulting from those unpaid assessments. Most recently, Mr. Maehr has challenged the legality of the revocation of his United States passport as a consequence of his unpaid tax bill. *See Maehr v. U.S. Dep't of State*, Civil No. 18-cv-02948-PAB-NRN (D. Colo.). That matter is currently on appeal before the Tenth Circuit Court of Appeals.

But this case involves Mr. Maehr's effort to obtain copies of the underlying documents used by the IRS to formulate the disputed tax assessments. On July 23, 2019, Mr. Maehr sent a FOIA request to the IRS seeking:

> copies of any and all "**pre-assessment documents**" the IRS used for creating the tax assessment figures against me for the years 2003-2006, including any and all third-party summonsed documents obtained relevant to the assessment itself, and any other relevant documents used to **create** and **substantiate** the assessment figures, the "certificate of assessment," or any other "in house" created documents by the IRS against me.
> . . .

> This DOES include the actual documents utilized to create the assessment figures

Dkt. #1-1 at 1 (emphasis in original).

Mr. Maehr received a response from IRS Disclosure Specialist Lisa Soli which stated that it was the IRS's "final response" to his FOIA request and would not be conducting a search because the records request did not describe the documents in sufficient detail to enable the IRS to locate the records "without placing an unreasonable burden upon the IRS." Dkt. #1-1 at 3.

Having made the initial request relatively plain, Mr. Maehr filed a second FOIA request attempting to make the same request somehow even more plain than his initial request. He sent his second request on August 20, 2019. He concluded his second request with the following plea:

> To reiterate, this is merely a request for the simple documents (if any) the IRS used to assess Jeffrey T. Maehr for the tax years 2003-2006, nothing more, nothing less . . . **JUST THE ALLEGED DOCUMENTS USED IN GENERATING/CREATING/MANUFACTURING, OR IN ANY OTHER WAY, PRODUCING THE STATED ASSESSMENT AGAINST ME.**
>
> This does NOT mean I am requesting the IRS to provide "any and all documents" . . . but **ONLY** the limited and specific documents pertaining to the assessment for the years 2003-2006, inclusive. **If said documents do not exist, please state so clearly and unambiguously**.

Dkt. #1-1 at 6. Mr. Maehr has provided documentation showing that his second FOIA request was received on August 27, 2019.

Mr. Maehr did not receive a response from the IRS to his second FOIA request. So, on October 25, 2019, he sent a "THIRD/FINAL FOIA REQUEST," which read:

> I filed a second FOIA request dated August 20, 2019 (USPS Cert # 7017-30 40-0001-1644-0248) and received by this agent on August 27th, 2019. To date, I have not received any response within the 20-day time limit. Record of all requests are below. Unless I receive a response to this FOIA,

3

> suit will be brought before the U.S. District Court in Colorado for FOIA violations and failure to provide documents requested.

Dkt. #1-1 at 10. The IRS received this third FOIA request on November 5, 2019, as shown by the U.S. Postal Service website delivery verification. Receiving no response to his third FOIA request within 20 days, Mr. Maehr filed this lawsuit titled "FOIA VIOLATION COMPLAINT" on December 9, 2019.

As relief, the lawsuit seeks in words or substance,

(i) a declaration that the IRS violated FOIA,

(ii) for the Court to order "an immediate reasonable search or any and all responsive records to Plaintiff's simple FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of all *exculpatory/inculpatory* records responsive to Plaintiff's FOIA requests;

(iii) for the Court to Order the IRS to produce, by a specified date, any and all non-exempt records to Plaintiff's FOIA requests, and a *Vaughn* index of any responsive records withheld under the claim of exception;

(iv) an injunction barring the IRS from continuing to withhold any non-exempt responsive records;

(v) an award of costs reasonably incurred in this action under 5 U.S.C. §552(a)(4)(E).

5 U.S.C. §552(a)(4)(E)(i) allows a court to award reasonable attorneys fees and other litigation costs reasonably incurred in any FOIA case where the "complainant has substantially prevailed." The statute defines the term "substantially prevailed" to mean when the complainant has obtained relief through either "judicial order, or enforceable written agreement or consent decree"; or a "voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."

Mr. Maehr filed an Amended Complaint on December 18, 2020. *See* Dkt. #5. The Amended Complaint contains essentially the same factual allegations as the original

4

Complaint, requesting that the IRS be compelled to conduct a search for the requested documents, noting that the IRS had failed to determine whether to comply with the requests, notify Plaintiff of any such determination or the reasons therefore, or produce the requested records or otherwise demonstrate that the requested records are exempt from production. Dkt. #5 at 8. The relief requested in the Amended Complaint was substantially similar to the relief requested in the original Complaint.

**IRS's Motion for Summary Judgment**

On January 8, 2021, the IRS filed its Motion for Summary Judgment under Fed. R. Civ. P. 56 asserting that it had satisfied its duties under the FOIA. *See* Dkt. #51. The IRS posits that the only issue in dispute is the adequacy of its search because Plaintiff failed to allege in the Amended Complaint that the IRS's exemptions from disclosure were improper. In support of its Motion, the IRS submitted declarations by Lisa Soli, Angela Winters, Melidy Prater, and Vikramsing R. Barad. These declarations detail the scope and magnitude of the search for the documents requested by Mr. Maehr. A supplemental declaration by Angela Winters (Associate Chief Counsel for Procedure and Administration Branch 8, within the IRS Office of Chief Counsel), detailing further elements of the search, was submitted on February 9, 2021. *See* Dkt. #52-1.

**Legal Standard for Motion for Summary Judgment in FOIA Cases**

Chief Judge Brimmer recently issued a comprehensive order articulating the appropriate legal standard for deciding a summary judgment motion in a FOIA case. *See Rifle Remedies, LLC. v. Internal Revenue Service,* Civ. No. 18-cv-00949-PAB-GPG, 2021 WL 981317 (D. Colo. March 16, 2021). Conveniently, the *Rifle Remedies*

5

case also involved the adequacy of an IRS response to a FOIA request. I repeat Chief Judge Brimmer's articulation of the legal standard:

> FOIA was passed in 1966 "to provide a public right of access, enforceable in federal court, to agency records." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1225 (10th Cir. 2007). To achieve this purpose, FOIA confers on federal courts jurisdiction to review de novo an agency's withholding of records and to "order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). Although an agency must generally produce records responsive to a FOIA request, "Congress recognized that disclosure of certain classes of documents could harm legitimate government interests." *Trentadue*, 501 F.3d at 1225-26. Accordingly, FOIA contains nine specific exemptions allowing agencies to withhold otherwise responsive documents. *See id.* at 1226 (citing 5 U.S.C. § 552(b)).
>
> Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). "In general, FOIA request cases are resolved on summary judgment." *World Publ'g Co. v. U.S. Dep't of Justice*, 672 F.3d 825, 832 (10th Cir. 2012); *Judicial Watch, Inc. v. U.S. Dep't of Housing & Urban Dev.*, 20 F. Supp. 3d 247, 253 (D.D.C. 2014) ("FOIA cases typically and appropriately are decided on motions for summary judgment." (internal quotation marks omitted)). An agency is entitled to summary judgment if it shows that "it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Id. (internal quotation marks omitted); *see also Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 138 F. Supp. 3d 1216, 1220 (D. Colo. 2015) ("A FOIA defendant may prevail on a motion for summary judgment if it proves that the documents within the FOIA request have been produced or fall within a statutory exemption."). To prevail on summary judgment, the defending agency has the burden of showing that its search was adequate and that any withheld documents are within a FOIA exemption. *Whitson v. U.S. Forest Serv.*, 253 F. Supp. 3d 1133, 1139 (D. Colo. 2017).
>
> "[A] FOIA requester may challenge the adequacy of the agency's search for responsive records, the adequacy of the agency's application of FOIA exemptions to his or her request, or both." *Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 34 (D.D.C. 2017) (internal quotation marks omitted). A court's review of an agency's decision to withhold records is guided by two principles: first, "FOIA is to be broadly construed in favor of disclosure"; second, FOIA's "exemptions are to be narrowly circumscribed."

> *Trentadue*, 501 F.3d at 1226. "The federal agency resisting disclosure bears the burden of justifying withholding." *Id.*
>
> Under FOIA, an agency's search for records must "be reasonable in scope and intensity." *Trentadue v. Fed. Bureau of Investigation*, 572 F.3d 794, 797 (10th Cir. 2009). "[T]he focal point of the judicial inquiry is the agency's search process, not the outcome of its search." *Id.* at 797. Whether an agency's search was reasonable turns on the "circumstances of the case" and "the likelihood that [the search] will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives." *Id.* at 797-98.
>
> While an agency need not prove that it "search[ed] every record system" or that "no other potentially responsive documents might exist," *Rocky Mountain Wild*, 138 F. Supp. 3d at 1221, the agency must demonstrate that "it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 402 (D.C. Cir. 2017). To satisfy this burden, an agency may rely on affidavits or declarations from agency officials that "are relatively detailed, nonconclusory, and submitted in good faith." *Info. Network For Responsible Mining (Inform) v. Bureau of Land Mgmt.*, 611 F. Supp. 2d 1178, 1184 (D. Colo. 2009) (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)). In other words, the affidavits or declarations must generally "set[ ] forth the search terms and the type of search performed, and aver[ ] that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search." *Al-Turki v. Dep't of Justice*, 175 F. Supp. 3d 1153, 1211 (D. Colo. 2016) (quoting *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 362 (4th Cir. 2009)). Reasonably detailed "affidavits or declarations are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Sandy v. Exec. Office for U.S. Attorneys*, 170 F. Supp. 3d 186, 189 (D.D.C. 2016) (internal quotation marks omitted). However, summary judgment is inappropriate "if the record leaves substantial doubt as to the sufficiency of the search." *Id.* (internal quotation marks omitted).

*Rifle Remedies* at *2-3.

**The IRS's efforts to locate responsive documents.**

In connection with its Motion for Summary Judgment, the IRS attached a number of declarations outlining the searches conducted for documents requested by Mr.

Maehr. Without reciting in detail all of the searches or types of searches conducted, the declarations reflect a number of different efforts by the IRS to find responsive documents, including:

- Use of the IRS's Integrated Data Research System ("IDRS") which the central database and operating system that the IRS uses to maintain taxpayer records to find "leads";

- Location of responsive transaction codes on IDRS transcripts and a request to the IRS's federal records center in Ogden, Utah to procure responsive documents;

- An effort to obtain "charged-out" records for the 2003–2005 tax years. A "charged out" record, means that a paper document was removed by an IRS employee but not returned. Efforts to locate the charged-out documents included phone and e-mail contacts with six individuals at two federal agencies, the IRS and the Department of Justice.

- Delivery of certain responsive documents to Plaintiff on August 15, 2019.

- In response to Mr. Maehr's October 25, 2019 FOIA request, which specifically sought summonsed records from third parties for tax years 2003–2006, the identification of a prior 2014 FOIA request, which was a duplicate of the October 25, 2019 request.

- A follow-up on previous attempts to locate possible sources of third party and summons-related documents that had been charged out from the Ogden, Utah records center in 2017 and had not been returned.

- A review of 611 pages of documents previously sent to Maehr in response to a 2014 FOIA request that were deemed responsive to his First, Second, and Third FOIA requests and redelivery on July 10, 2020 of those same documents from the 2014 search (subject to redaction consistent with FOIA exemptions).

- After the filing of this lawsuit, IRS representatives continued to search for the third-party summonsed records.

- In August 2020, there was additional follow up with Ogden, Utah to determine whether the charged-out documents had been returned, but they had not been.

- Contact was further made with Counsel Supervisory Legal Administrative Specialist to discuss the charged-out documents' whereabouts, but no further progress was made.

8

- Through November and December 2020, additional contact was made with the Denver, Colorado Exam Territory Manager to obtain further clarification of and summonses related to banking records and where those records may be located.

- Further efforts were made by a file clerk with the IRS Wage & Investment's service center in Kansas City, Missouri to understand the response received from the Ogden, Utah records center. The explanation was that records related to Mr. Maehr's tax case still existed and are being saved because a tax balance remains owned by Mr. Maehr. A second request was sent to Ogden, Utah, with an expedited response requested.

- Additional inquiries were made with a territory manager in Colorado, with a Technical Services Program Manager, with the Lead Tax Examining Technician in the IRS Independent Office of Appeals in Denver, a Supervising Internal Revenue Agent with the IRS Centralized Case Processing in Memphis, Tennessee, an IDRS & Specialty Team Manager in the IRS's Kansas City, Missouri office, and the IRS's Records Management Unit.

Notwithstanding all these efforts to coordinate with IRS personnel to search for and track down the existence of potential summons-related banking records, the IRS has been unable to locate any additional records regarding Mr. Maehr's FOIA request concerning third-party pre-assessment records or third-party summonsed records. The IRS does not know whether the third-party summonsed records sought have been destroyed. The reality is that despite yeomanlike search efforts, it is impossible to tell whether the documents (including checked-out documents) still exist or have been destroyed. Dkt #51-2 at ¶ 92.

**Plaintiff Acknowledges the IRS Conducted a Reasonable Search**

Mr. Maehr's Response the Defendant's Motion for Summary Judgment (Dkt. #55) expresses significant (perhaps understandable) frustration that the pre-assessment documents he seeks were not located. *See* Dkt. #55 at ¶ 12 (referring to the "re-release" of documents previously produced in 2014 and asserting that "[s]aid 're-released' documents in 2020 to Plaintiff did NOT contain any hint of copies of any

9

personal, 'pre-assessment' documents, original bank records, third party summonsed records, or anything remotely related to the creation of an assessment against Plaintiff"). *See also Id.* ¶ 16 ("The record herein proves that there are alleged records that have disappeared from Defendant's records, with no copies of "charged-out" documents retained as part of the record, and that the original "charged-out" documents have not been returned by various Defendant parties, and that these records have been nonexistent as a permanent part of Plaintiff's tax record, assessment, and penalties, since at least 2014, long before any assessment took place.").

But, as noted above, the "focal point" of the Court's inquiry in a FOIA lawsuit is the adequacy and reasonableness of the "agency's search process" and not "the outcome of its search." *Trentadue*, 572 F.3d at 797. *See also Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) ("The issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate[,] . . . [which is determined under] a standard of reasonableness, and is dependent upon the circumstances of the case."); *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 547 (6th Cir. 2001) ("The question focuses on the agency's search, not on whether additional documents exist that might satisfy the request.").

Thus, the fact that documents may exist, or at one time existed, which were not located during the IRS's search is not relevant to a plaintiff's FOIA claim. Instead, the dispositive question is whether the IRS's search for these documents, while unsuccessful, was reasonable. *Trentadue*, 572 F.3d at 797. And on this critical question, Mr. Maehr concedes the IRS fulfilled its obligation, acknowledging that the

10

IRS "has provided an abundance of evidence that it conducted a thorough, complete and adequate search for Plaintiff's FOIA requested documents." Dkt. #55 at ¶¶ 24-25.[1] The failure to locate the requested documents does not have an impact on the only real issue in this case – whether the IRS conducted a reasonable search. *See Trentadue*, 572 F.3d at 807 ("The issue in a FOIA lawsuit challenging an agency's search for records is not whether there exist further documents responsive to a FOIA request but whether the agency conducted a reasonable search for responsive documents.").

Because it is undisputed that the IRS conducted a reasonable (although ultimately unsuccessful) search for records responsive to Mr. Maehr's FOIA requests, summary judgment should be granted to the IRS.

**Mr. Maehr is Not Entitled to Declaratory Judgment**

Mr. Maehr concedes the reasonableness of the IRS's effort to locate pre-assessment and third-party documents that were used to justify the IRS's adverse tax assessment. That search did not locate any documents of the sort Mr. Maehr was seeking. Therefore, Mr. Maehr has moved the Court to issue a declaration based on the fact that despite a thorough search, "no hint of any kind of Plaintiff's original 'pre-

---

[1] If the IRS were withholding any pre-assessment documents pursuant to any claimed exemptions, or if Mr. Maehr were challenging any of the redactions made by the IRS, then the IRS would also be required to establish that it has properly claimed any exemptions. *See Hull v. IRS*, 656 F.3d 1174, 1177 (10th Cir. 2011) (explaining that with respect to any documents or portions of documents withheld pursuant to exemption, any submitted affidavit "must show, with reasonable specificity, why the documents fall within the exemption") (quoting *Quinon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996). But, under the circumstances of this case, Mr. Maehr is complaining, not about any redactions or specifically withheld documents, but about the IRS's failure to locate certain documents that he requested. Thus, the Court agrees with the IRS's position, stated in its Reply, that because the IRS is not withholding any third-party summonsed documents or bank records, the issue of exemptions is moot and not at issue. *See* Dkt. #60 at 4 (IRS Reply in Support of Summary Judgment).

11

assessment' documents used for the manufacture of the 'substitute for returns' for the years 2003-2006 were located or provided to [Mr. Maehr] as part of his FOIA request." Dkt. #58 at 1. He asks that the Court "declare and adjudge" that "despite due diligence performed by [the IRS] for said original pre-assessment and summonsed records, such records have not been provided to Plaintiff under FOIA [. . .], and are clearly missing from Defendant's tax assessment record as described by Defendant for 2003-2006 alleged tax years." *Id.*

Mr. Maehr maintains that it is "strange" that all the IRS's in-house documentation used to create the adverse tax assessment against him were "recorded and saved" but all of Mr. Maehr's personal pre-assessment 2003–2006 asset documents and third-party summonsed documents "that might have been used to manufacture the assessment are now completely missing from Defendant's records." Dkt. #62 at 7. Mr. Maehr's position appears to be that if these documents ever existed, then they would have and should have been kept and maintained in the IRS's record-keeping system. *Id. See also* Dkt. #57 at 2 ("No other conclusion can be drawn from these facts of record except that no pre-assessment, original documents of any kind exist in Defendant's record for Plaintiff."). Mr. Maehr appears to be attempting to establish facts supporting the argument that because underlying documents that would have justified the adverse tax assessment cannot be located today, they must never have existed in the first place.[2]

---

[2] *See* Dkt. #62 at 4 ("Plaintiff has been seeking these pre-assessment records through a dozen lawsuits against Defendant, and not once did Defendant offer up said documents or deny possession of same. All debts of any kind must have 'proof of debt' or 'debt validation.'").

On the issue of his request for a judicial declaration, Mr. Maehr says he is

> simply seeking a clear, concise and specific statement from the court to the effect that the [IRS], after this FOIA suit, and after having done a thorough, reasonable search for any and all responsive pre-assessment personal and third party summonsed documents regarding the tax debt and assessment, that no such records are presently in the possession of the IRS, and are not recorded or otherwise documented or available in Defendant's records, despite [the IRS's] own laws stating that all such records of ongoing tax debts must be saved.

Dkt. #62 at 9.

Despite what Mr. Maehr believes is obvious, it is not this Court's role, in the context of a FOIA lawsuit, to issue a declaration as to whether certain documents do or do not exist, or have ever existed, within the IRS's record-keeping system. The limited issue before the Court is whether the IRS's search has been reasonable. Mr. Maehr provides no authority that would justify a judicial declaration of the type he is seeking. Neither is a FOIA lawsuit the proper forum within which to litigate (or relitigate) an adverse tax assessment by the IRS. Absent legal authority for the issuance of a declaratory judgment of the type Mr. Maehr seeks, his request will be denied.

Mr. Maehr's declaratory judgment request must be denied for another reason. Under 28 U.S.C. § 2201(a), a declaratory judgment request is required to be asserted in an "appropriate pleading." A pleading is a complaint or an answer, not a motion or a brief. Mr. Maehr did not include a specific request for this declaratory judgment in his amended complaint. *See Zimmerman v. The CIT Group, Inc.,* No. 08-cv-00246-ZLW-KLM, 2009 WL 900172 (D. Colo. March 31, 2009) at *4 (denying requests for declaratory judgment for failure to include the requests in the complaint).

To the extent Mr. Maehr thinks they may be useful in other proceedings, the factual statements in the IRS's affidavits and in the IRS's briefs may potentially serve as admissions by the IRS. *See, e.g.*, Dkt. #51 at 18 (IRS's Motion for Summary Judgment) ("The IRS has produced all responsive and non-exempt documents that it has located in connection with the Plaintiff's FOIA requests."). But Mr. Maehr is not entitled to a declaration by the Court merely repeating the facts or conclusions underlying the IRS's admissions.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the IRS's Motion to Supplement (Dkt. #52) be **GRANTED**; and it is further

**RECOMMENDED** that the IRS's Motion for Summary Judgment (Dkt. #51) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's Motion for Declaratory Judgment (Dkt. #58) be **DENIED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999);

*Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Dated May 24, 2021            By the Court:

*[signature]*

N. Reid Neureiter
United States Magistrate Judge